IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| ANGELA Y. MAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:06-CV-165 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 14] will be denied, and plaintiff's motion for summary judgment [doc. 12] will be granted in part, to the extent that it seeks remand pursuant to sentence four of § 405(g).¹

---

¹ "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

# I.

## *Procedural History*

Plaintiff applied for SSI benefits in March 2003, claiming to be disabled by chronic pain in her lower back, right shoulder, left leg, and hip. [Tr. 64, 78]. Plaintiff alleged a disability onset date of September 1, 1998. [Tr. 66]. Her application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on April 1, 2004. A supplemental hearing was held on October 26, 2004, for the taking of medical and vocational expert testimony.

On November 23, 2004, the ALJ issued a decision denying benefits. He determined, in relevant part, that plaintiff has "degenerative disc disease, chronic obstructive pulmonary disease, and depression," which are "severe" impairments but not equivalent to any impairment listed by the Commissioner. [Tr. 21]. The ALJ rejected medical opinions including those of examining sources and a purported treating physician, concluding that plaintiff retains the residual functional capacity to perform essentially the full range of light work. Relying on vocational expert testimony that plaintiff could perform a significant number of light jobs existing in the regional and national economies, the ALJ denied plaintiff's SSI claim. [Tr. 28-32].

Plaintiff then sought review from the Commissioner's Appeals Council. On March 9, 2006, review was denied despite the consideration of approximately forty pages of

additional evidence submitted by plaintiff. [Tr. 9, 12, 578-619].[2] The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff was born in 1964. She attended school into the ninth grade until she was expelled for substance abuse. [Tr. 84, 502]. She claims constant, severe pain stemming from a purported incident on September 1, 1998, in which she was "ran over by [a huge] farm tractor." [Tr. 66, 78, 95-97]. She purportedly "cannot do anything . . . is very sick and does nothing but lay on the bed[.]" [Tr. 96, 103]. It is alternatively alleged that she does "[n]ot very much," that she cannot stand up, that she cannot walk without assistance, and that she cannot sleep for more than two hours per day due to her pain. [Tr. 104-05, 629].

An October 2002 lumbar MRI showed a "[s]mall central protrusion L5/S1 . . . highly deform[ing] the thecal sac." [Tr. 224]. However, December 2001 and February 2002 lumbar imaging was "normal." [Tr. 198, 213]. A March 2003 MRI of the right shoulder showed a possible "partial thickness tear of the rotator cuff." [Tr. 246]. However, January 2003 right shoulder imaging was "normal." [Tr. 230].

---

[2] Plaintiff summarizes this evidence in the factual portion of her brief to this court. However, she makes no argument that any of the evidence warrants remand under sentence six of 42 U.S.C. § 405(g). Any such argument is accordingly waived.

3

Plaintiff was hospitalized in March 2004 with pneumonia [Tr. 426] and is regularly treated for chronic constipation. She smokes up to *four* packs of cigarettes per day [Tr. 237, 371, 428] and has been diagnosed with chronic obstructive pulmonary disease. [Tr. 426]. However, May 2004 and July 2004 chest x-rays were "normal" with "clear" heart and lungs. [Tr. 528, 545].

III.

*Expert Testimony*

Vocational expert Donna Bardsley ("Ms. Bardsley" or "VE") testified at plaintiff's administrative hearing. The ALJ presented Ms. Bardsley with a hypothetical claimant of plaintiff's age, education, and work experience subject to the following limitations: light work; clean environment; seriously limited in, but not precluded from, dealing with work stress; no "intense" supervision or coworker interaction; and working with "things not people." [Tr. 652-53]. In response, the VE listed examples of existing jobs that the hypothetical claimant could perform, including hand packager, sorter, assembler, and inspector. [Tr. 653]. If the limitations predicted by either psychologist Kathryn Smith or nurse practitioner Mary Russell were credited, the VE testified that employment would be precluded. [Tr. 653-54].

IV.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

V.

*Analysis*

Plaintiff argues that the ALJ erred by not providing adequate reasons for rejecting the opinions of: examining sources Jeffrey Summers, George Brooks, and Kathryn Smith; nurse practitioner Russell; file reviewer Reeta Misra; and treating physician Wohlwend. The court will discuss these medical source opinions after first addressing the issue of plaintiff's credibility, which appears to have been an overarching factor in the ALJ's decision to deny benefits. [Tr. 27, 29].

A. Credibility

The ALJ found plaintiff's credibility to be "diminished" and observed that her "allegations are simply not supported by the objective evidence." [Tr. 29]. Specifically, the ALJ cited: receipt of tranquilizer and antidepressant prescriptions inconsistent with the minimal severity of plaintiff's complaints; medical expert testimony identifying likely drug-seeking behavior; minimal effort on IQ and personality testing; plaintiff's ability to ambulate without the use of assistive devices; her failure to eliminate her three-to-four pack per day smoking habit while simultaneously claiming disabling respiratory symptoms;[3] her failure to take prescribed medication; activities including yardwork and climbing a stepladder; plaintiff's inconsistent testimony regarding her work history; and her refusal of injections for her complaints of pain. [Tr. 21, 23-26, 29].

---

[3] In May 2004, plaintiff told Dr. Brooks that she had not smoked in two months [Tr. 489], but two weeks later was admittedly again smoking. [Tr. 559].

Credibility determinations are "peculiarly within the province of the ALJ," *Villarreal v. Secretary of Health & Human Services,* 818 F.2d 461, 464 (6th Cir. 1987), and conclusions regarding a claimant's credibility must be accorded great deference by this court. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

> [A]fter listening to what [plaintiff] said on the witness stand, observing his demeanor, and evaluating that testimony in light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment. . . . [W]e will not normally substitute our impressions on the veracity of a witness for those of the trier of fact. We would be particularly reluctant to do so in this case, where there seem to be demonstrable discrepancies between what the claimant said on the stand and what the written record shows.

*Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

In addition to the credibility issues cited by the ALJ, the court makes the following observations:

> 1. Plaintiff relates her purported disability to being "ran over by [a huge] farm tractor" on her alleged disability onset date of September 1, 1998. The administrative record, however, surprisingly contains <u>no documentation</u> of contemporaneous treatment for any such devastating event. Although plaintiff has regularly visited the emergency room seeking prompt treatment of conditions such as an insect bite [Tr. 181], toothache [Tr. 147], earache [Tr. 251], sore throat [Tr. 349, 360-61], flu-like symptoms [Tr. 164], cold-like symptoms [Tr. 251], being kicked by an uncle [Tr. 159], and falling from a ladder [Tr. 233, 236], she states that she did not go to the ER after being run over by the "huge tractor." [Tr. 488].

2. Plaintiff purports to have instead been "taken to [an unidentified] family physician" following the alleged accident. [Tr. 488]. The "family physician" would appear to have been Dr. Leonard. [Tr. 488, 633]. At her administrative hearing, plaintiff volunteered that Dr. Leonard "misplaced a lot of my records." [Tr. 633]. However, the administrative record contains Dr. Leonard's treatment notes from plaintiff's visits on August 17, September 4, October 12, and October 29, 1998, and plaintiff on those dates offered no complaints pertaining to being run over by a tractor. [Tr. 133]. It was only at a December 3, 1998 appointment that she reported having been "ran over by a tractor 5-6 weeks ago." [Tr. 133].

3. Although plaintiff has twice claimed she was in "good health" prior to the alleged tractor accident [Tr. 237, 490], pharmacy records show that she was *regularly* obtaining narcotics at least two and one half years *prior to* that purported event. [Tr. 334-42].

4. Plaintiff sought emergency room treatment on September 17, 2001. Her description of the precipitating incident was recorded by the medical personnel as follows: "pt walked down to get the mail [and] was coming back past a utility trailer when all [of a] sudden the tire blew up. She fell to the ground." [Tr. 176]. In December 2001, she repeated to the ER personnel that a "tire blew out in Sept. and hurt her." [Tr. 196]. However, in November 2001 plaintiff described the incident as "she was knocked over by a *rolling* trailer [and] the tire struck her." [Tr. 190] (emphasis added). Then, in March 2002, she characterized the alleged incident as a "motor vehicle accident" [Tr. 201] or a "car wreck." [Tr. 202].

5. Despite being purportedly disabled on September 1, 1998, plaintiff was able to perform yardwork as recently as May 2001. [Tr. 181, 184]

6. Despite being purportedly disabled on September 1, 1998, plaintiff was able to climb a ladder in January 2003 while "doing some repairs" at "Ramona's Hair Shop." [Tr. 216, 233, 236]. At her first administrative hearing, plaintiff testified that the repair project was "like only a couple of nails" replaced by her husband as a favor to his aunt. [Tr. 625]. This assertion does little to explain why plaintiff, who purports to be a virtual invalid, would be a necessary - let alone able - participant in the repair activity.

7. At her first administrative hearing, plaintiff testified that she has done no babysitting work since the alleged 1998 tractor incident. [Tr. 625]. However, the emergency room records of Jefferson Memorial Hospital identify plaintiff, on her visits between April 1999 and February 2002, as a "self-employed baby sitter." [Tr. 137, 145, 150, 155, 162, 167, 173, 180, 192, 206]. From March 2002 through April 2004, the hospital's emergency room records label plaintiff a "self-employed caregiver." [Tr. 200, 226, 347, 359, 372, 385, 395, 411, 475, 480]. It was not until April 19, 2004, that the emergency room records began to indicate that plaintiff was unemployed. [Tr. 552].

8. Plaintiff initially told the Commissioner that she worked as a farm laborer from 1984 through 1998. [Tr. 87-93]. Similarly, she informed Dr. Summers and Dr. Brooks that she "was last employed as a farm laborer in 1998" [Tr. 237, 488] and told Dr. Smith that "[s]he last worked in 1998 on a farm . . . . She had been doing farm work for 16 years at various farms." [Tr. 502]. Again, on her "Disability Report - Adult," plaintiff claimed to have stopped working on September 1, 1998. [Tr. 78]. However, her earnings record shows no reported income since 1987. [Tr. 70]. Elsewhere, plaintiff told the Commissioner that she had not worked in the previous fifteen years. [Tr. 123]. Further, at her first administrative hearing, she thrice attempted to deny doing any work - including farm work - since 1987. [Tr. 624]. Compounding these inconsistencies, on May 5, 2001, plaintiff was given an "off work note" by the Jefferson Memorial Hospital following treatment for the possible insect bite suffered while performing yardwork. [Tr. 182].

For these reasons, and for the reasons cited by the ALJ, substantial evidence supports the overarching conclusion that plaintiff's credibility is, at a minimum, "diminished."

### B. Nurse Practitioner Russell

In March 2004, Mary Russell completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)." The assessment predicted no ability to deal with work stresses or to relate predictably in social situations because plaintiff was considered "very depressed." [Tr. 313-14]. Five other vocational capacities were viewed as "seriously

10

limited." [Tr. 313-14].

Mary Russell is nurse practitioner. [Tr. 291]. As a nurse practitioner, Ms. Russell is not an "acceptable medical source" who can provide evidence to establish an impairment. *See* 20 C.F.R. § 416.913(a), (d). Further, as noted by the ALJ, Ms. Russell expressly stated that plaintiff "has not undergone treatment long enough to determine if she is going to be disabled long term by this [depression and anorexia]." [Tr. 28, 314]. Also, as noted by the ALJ, plaintiff has denied being depressed [Tr. 28, 267], and she testified that her only emotional limitation would be "I just can't deal with the public." [Tr. 631]. For these reasons, substantial evidence supports the ALJ's rejection of nurse practitioner Russell's extreme opinion.

## C. Kathryn Smith

Psychologist Kathryn Smith performed a consultative examination in May 2004. Dr. Smith predicted a number of serious vocational limitations [Tr. 509-11] based on plaintiff's self-report of depression, pain, and limited sleep. [Tr. 507-10]. Intelligence test results were low, and Dr. Smith deemed the score invalid because plaintiff self-reported that "she was not able to put forth her best effort because she was in pain." [Tr. 506]. However, personality testing (MMPI-2, the results of which were also deemed invalid) showed that plaintiff "seem[s] to have grossly exaggerated and overreported psychopathology." [Tr. 506].

The ALJ "totally rejected" Dr. Smith's assessment "due to the claimant's invalid IQ scores and lack of effort" along with inconsistencies present in the report. [Tr. 28-29]. The ALJ also cited medical expert Dr. Schacht's testimony that the low IQ score, and purported inability to attend due to pain, were "not consistent with her ability to complete the MMPI testing." [Tr. 26].

Plaintiff did not put forth her best effort in testing. Dr. Smith found evidence of "grossly exaggerated and overreported psychopathology." Dr. Smith relied in significant part on plaintiff's questionable self-reporting. For these reasons, substantial evidence supports the ALJ's rejection of Dr. Smith's assessment.

### D. "Dr. Wohlwend"

Plaintiff submitted records from the "Tennessee Valley Integrative Pain Center" commencing April 30, 2003. [Tr. 257-68, 562-64]. Plaintiff contends that these are the records of a treating physician "Dr. Wohlwend." The records are handwritten, somewhat illegible, and do not indicate that they were completed or approved by a physician. From the same source, plaintiff also submitted a "Medical Assessment of Ability to Do Work-Related Activities (Physical)." [Tr. 269-70]. The assessment contains limitations more severe than those adopted by the ALJ, including predicted restrictions of sitting, standing, and walking that would preclude all employment. Like the pain center records as a whole, the assessment contains virtually illegible handwritten notations and no comprehensible documentation of who completed the form. The court's best attempt at reading the assessment indicates that

the predicted limitations were based on reduced range of motion in the shoulder and back, along with plaintiff's self-reports of pain.

The ALJ correctly rejected this assessment as being of a severity inconsistent with both the treatment records of the pain center and the objective evidence of record. [Tr. 28]. The assessment is also of minimal value because it originated from an unknown source. Substantial evidence thus supports the rejection of the "Tennessee Valley Integrative Pain Center" assessment.

### E. Drs. Summers and Brooks

At the Commissioner's request, Dr. Jeffrey Summers and Dr. George Brooks performed consultative physical examinations in July 2003 and May 2004, respectively. Following their examinations, each physician predicted work-related limitations more severe than those ultimately adopted by the ALJ. Dr. Summers opined that "it is reasonable to expect that she will have difficulty bending at the waist as well as stooping, kneeling, squatting, climbing, and lifting greater than 20 lbs on a frequent basis." [Tr. 239]. Dr. Brooks predicted that plaintiff: (1) would be limited to occasional stooping, kneeling, and crouching; (2) would also be limited in reaching, pushing, pulling, and working around heights; and (3) should never climb, balance, or crawl. [Tr. 499-500].

The ALJ rejected Dr. Summers's conclusions as based "on the claimant's complaints and not on his own physical examination" and because spinal x-rays revealed only "mild" and "moderate" problems. [Tr. 28]. Dr. Brooks's assessment was rejected in

material part because "[a]lthough the claimant has been treated for complaints of back pain and a strain of the right shoulder, these problems have not required hospitalization or surgery." [Tr. 28]. The ALJ instead adopted the conclusions of nonexamining medical consultant Dr. Edward Griffin, who opined that plaintiff could work at the light exertion level with no physical limitations other than working "in a clean but not sterile environment." [Tr. 29, 648]. This aspect of the ALJ's decision is not supported by substantial evidence and must be reversed.

The Commissioner's regulations provide that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(d)(1). The Commissioner may reject the opinion of an examining source but the reasons provided must be able to survive substantial evidence review.

As for Dr. Summers's opinion, the court cannot agree that the assessment was not based on objective findings. On examination, Dr. Summers found "a moderate decrease in range of motion at her lumbar spine." [Tr. 239]. *See Martin v. Sec'y of Health & Human Servs.*, No. 85-1828, 1986 WL 18075, at *6 (6th Cir. Oct. 23, 1986) (restricted range of motion is an *objective*, not *subjective*, finding); *Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482-83 (E.D. Mich. 2000) (same). Also, following review of lumbar x-rays, Dr. Summers noted "moderate reactive sclerosis" and "[m]ild degenerative changes." [Tr. 239]. Certainly, these findings do not by themselves support a conclusion that plaintiff is disabled. They do,

however, at least support Dr. Summers's opinion that plaintiff cannot perform the full range of light work.[4]

The reason articulated for rejecting Dr. Brooks's assessment (as it pertains to shoulder and spinal problems) also does not survive substantial evidence review. Dr. Brooks's postural conclusions were based on his review of spinal and shoulder MRIs, along with observation of reduced range of motion in the spine, right shoulder, and left hip. [Tr. 487, 492]. As with Dr. Summers's assessment, Dr. Brooks's findings do not mandate the conclusion that plaintiff is disabled. They do, however, at least support Dr. Brooks's opinion that plaintiff is unable to perform the full range of light work.[5] Hospitalization and/or surgery are not prerequisites to a condition having *some* limiting effect on a claimant's ability to work.

Because the ALJ's residual functional capacity conclusion does not fully survive substantial evidence review, this matter will be remanded pursuant to sentence four

---

[4] The Commissioner argues that any error involving Drs. Summers and Brooks should be deemed harmless. The court cannot agree. The Commissioner directs the court's attention to various Social Security Rulings suggesting, for example, that light work generally involves only "occasional" stooping and "very little" climbing. These generalities do little to address the specific jobs identified by the vocational expert in response to the ALJ's flawed hypothetical and do not speak to plaintiff's specific circumstance and the specific objective evidence of this case.

[5] To the extent that the ALJ rejected Dr. Brooks's chronic obstructive pulmonary disease-based restrictions, the articulated reasons are supported by substantial evidence. [Tr. 28]. Dr. Brooks relied primarily on plaintiff's self-reporting, the value of which has already been addressed by the court. [Tr. 489]. Moreover, on examination Dr. Brooks observed that plaintiff's lungs were "[c]lear anterior and posterior without wheeze or rhonchi" although there were "[d]ecreased breath sounds" [Tr. 491], which is an expected side effect of smoking four packs of cigarettes per day. Further, May 2004 and July 2004 chest x-rays were "normal" with "clear" heart and lungs. [Tr. 528, 545].

15

of 42 U.S.C. § 405(g) for the Commissioner to take additional vocational evidence. On remand, the hypothetical presented to the vocational expert should take into account the limitations predicted by Drs. Summers and Brooks, <u>but only to the extent that those limitations are based on objective evidence</u>. To the extent that the opinions of Drs. Summers and/or Brooks are not adopted on remand, the reasons articulated for their rejection must of course be able to survive substantial evidence review.[6]

Further, the Commissioner is directed *only* to perform further evaluation of plaintiff's claim <u>as of the period beginning January 14, 2003</u>. Although plaintiff told Dr. Brooks that her shoulder problems began when the "huge tractor" ran over her in September 1998 [Tr. 489], she told Dr. Vance that the same problem was related to the January 2003 ladder incident. [Tr. 216]. If plaintiff was capable of participating in remodeling activities as recently as January 14, 2003, she was also capable of working up until that date - as correctly noted by the ALJ. [Tr. 29].

## VI.

*Conclusion*

To the extent plaintiff asks this court to award benefits rather than remanding her case, that request must be denied. A reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately

---

[6] This analysis applies equally to the "Physical Residual Functional Capacity Assessment" performed by file reviewer Dr. Reeta Misra [Tr. 240-45], as Dr. Misra's conclusions appear to be largely based on the observations of Dr. Summers.

16

establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*.

The record does not contain strong or overwhelming evidence of disability. Instead, the record inconsistently contains - at best - mild to moderate findings. Further, as discussed, there is substantial evidence that plaintiff is dramatically overstating her symptoms and limitations. The court is not satisfied that "all essential factual issues have been resolved [or that] the record adequately establishes [] plaintiff's entitlement to benefits." *Id.* Benefits will not be awarded by this reviewing court.

An order consistent with this opinion will be entered.

ENTER:

<u>      s/ Leon Jordan      </u>
United States District Judge